**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BASHAR ZAYADEEN, | ) | |
|     Plaintiff, | ) | Case No.: |
| | ) | |
| v. | ) | Judge : |
| | ) | |
| ABBOT MOLECULAR, INC and , | ) | Magistrate Judge: |
| NICK SEMEDALAS, | ) | |
|     Defendants. | ) | JURY DEMANDED |

**COMPLAINT**

Plaintiff Bashar Zayadeen, ("Bashar" or "Plaintiff") by his undersigned attorneys, and for his Complaint of discrimination against Defendants Abbott Molecular, Inc. ("Abbott") and Nick Semedalas states as follows:

**NATURE OF THE CASE**

1. The causes of action for the Plaintiff arise under Title VII of the Civil Rights Act 42 U.S.C. § 2000e as amended, 42 U.S.C. § 1981, 28 U.S.C. Paragraph 1331, and 28 U.S.C. § 1367.

**JURISDICTION AND VENUE**

2. That this Court has jurisdiction over this matter based upon 42 U.S.C. § 2000e, 42 U.S.C. § 1981, 28 U.S.C. Paragraph 1331 and 28 U.S.C. § 1367.

3. Venue in the Northern District of Illinois is proper. The claim for relief arose in this state as required by 42 U.S.C. § 2000e.

4. That on or about November 12, 2009, Bashar filed a charge of discrimination (440-2010-00701) with the EEOC, alleging national origin discrimination, national origin harassment,

and retaliation. Said charges and allegations therein are attached and incorporated herein. (Attached as Exhibit A).

5. That Bashar received a right-to-sue letter from the EEOC in connection with his charge. (Attached as Exhibit B).

## PARTIES

6. That during all times relevant herein Bashar was a resident of the state of Illinois.

7. That Bashar's national origin is Jordanian.

8. That Defendant Abbott is duly registered to conduct business in the state of Illinois.

9. That at all times relevant herein, Abbott was engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

10. That all times relevant herein, Bashar was employed by Defendant as a Senior Financial Analyst.

11. That all times relevant herein, Nick Semedalas was employed by Defendant as an U.S. Operations Controller.

12. That at all times relevant herein, Abbott and its managers created an environment which encouraged and fostered a hostile work environment for Plaintiff due to his national origin. Such conduct was ongoing, open, and notorious. However, Abbott failed to take effective remedial action and instead retaliated against Plaintiffs.

## COUNT I
## COMPLAINT OF BASHAR ZAYADEEN FOR

## **HOSTILE ENVIRONMENT NATIONAL ORIGIN, ETHNICITY, AND RACE HARASSMENT DIRECTED AT ABBOTT MOLECULAR, INC. AND NICK SEMEDALAS**

13. Bashar incorporates the preceding paragraphs by reference here.

14. That Bashar was hired by Defendant in July 2007 as a senior financial analyst.

15. That during his employment, Bashar performed his assigned tasks in a satisfactory and conscientious manner according to Defendant's standards.

16. That starting on Approximately July 16, 2007, and continuing until the end of 2008, Bashar was subjected to persistent national origin, ethnicity and race harassment by Defendant's managers. Such harassing conduct included making fun of Bashar's accent and offensive stereotypical portrayals of Jordanians on a daily basis.

17. That beginning on approximately July 16, 2007 until approximately the end of 2008, Bashar was constantly discriminated against because of his national origin, ethnicity and race by Nick Semedalas, Defendant's U.S. operations controller, Peter Karbotsos, and Mark Heller, Financial Planning and Analysis Manager.

18. That Nick Semedalas, Peter Karbotsos, and Mark Heller's harassing comments were severe and pervasive.

19. That from approximately July 16, 2007, until approximately the end of 2008, Nick Semedalas (Non-Jordanian) referred to Bashar as "Borat" in reference to Comedian Sacha Baron Cohen's caricature of an individual from Kazakhstan.

20. That Nick Semedalas said to Bashar on numerous occasions, "you are from Kazakhstan, Borat."

3

21. That Nick Semedalas would tell Bashar that he looked like "Borat," and directed others to call Bashar "Borat." Nick Semedalas further told Bashar that he spoke like "Borat."

22. That from approximately July 16, 2007 until the end of 2008, Nick Semedalas subjected Bashar to these debilitating comments on a daily basis. Moreover, Nick Semedalas not only proffered these comments in front of others, but encouraged others to engage in the discrimination.

23. That Marc Heller was one such individual who told Bashar in approximately March 2008 that "we gave you a green card, the least you could do is speak English" while Complainant was speaking on his personal cell phone in Arabic.

24. That from approximately July 16, 2007 until the end of 2008, Peter Karbotsos would also engage in referring to Bashar as "Borat," and telling Bashar that he was "from Kazakhstan."

25. That moreover, on one occasion, Peter Karbotsos told Bashar, "You are not from Jordan, you are from Kazakhstan," and asked Bashar "Is that how your people in Kazakhstan do it?"

26. That each and every time Nick Semedalas or Peter Karbotsos would harass or discriminate against Bashar, Bashar informed them that, among other things, that "[the harassment] is not funny and that I don't like it when you call me that," or Bashar asked them to "stop. " Bashar also told these harassers, "my name is not Borat, that is offensive, please do not call me that."

27. That the harassment and discrimination did not cease. Ron Johnson was Bashar's manager. That from approximately July 16, 2007 until the end of 2008, Ron Johnson was aware that Nick Semedalas and Peter Karbotsos referred to Bashar as "Borat" and were telling Bashar that "he was from Kazakhstan," among other things, but failed to prevent or remedy the

harassment or discrimination.

28. That in November of 2008, Nick Semedalas subjected Bashar to unwarranted and baseless criticism and was overly critical of his work performance.

29. Ron Johnson was aware of this harassment because it often took place in his presence.

30. That in approximately May 2009, Nick Semedalas became Bashar's supervisor.

31. That on approximately July 13, 2009, Bashar sought a personal leave of absence from Abbott in order to return to Jordan.

32. Said personal leave of absence was approved by Abbott and Nick Semedalas.

33. That prior to the expiration of the approved personal leave of absence, Bashar contacted Abbott in order to return to his job. That Nick Semedalas called Bashar and told him that his position with Abbott was no longer available.

34. That Bashar's position, however, remained available and open and Defendant sought a replacement.

35. That Bashar was terminated from Abbott because of his National Origin, Jordanian, ethnicity and race.

36. That Defendant condoned national origin, ethnicity, and race harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and instructions to its employees and officers.

37. That Defendant's treatment of Bashar was motivated by evil motive and intent and was in reckless and callous indifference to Bashar's federally protected rights.

38. That the national origin, ethnicity and race harassment that Bashar was subjected to at the hands of Defendant, its agents, representatives and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and had the effect of creating a hostile and intimidating work environment for Bashar.

39. That said continuous and persistent national origin, ethnicity, and race discrimination and harassment adversely affected the terms and conditions of his employment with Defendant.

40. That as a direct and proximate result of said unlawful employment practices, Bashar has suffered the indignity of discrimination, the invasion of his right to be free from discrimination, and great humiliation which has manifested in physical illnesses and emotional stress on the relationships between Bashar and his friends and family.

41. That as a further direct and proximate result of said unlawful employment practices, Bashar has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself, harm to his employability and earning capacity, painful embarrassment among his friends and co-workers, damage to his reputation, disruption of his personal life, and loss of enjoyment of the ordinary pleasures of life.

## **PRAYER FOR RELIEF**

WHEREFORE, Bashar respectfully requests that the Court provide the following equitable and legal relief.

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendant from further acts of national origin discrimination and sexual harassment

    c.    Award Bashar back pay, reinstatement, appropriate future earnings, and reimbursement for income and fringe benefits lost to the present with applicable statutory interest.

    d.    Award Bashar, costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

    e.    Award Bashar, a judgment against Defendant for compensatory damages.

    f.    Grant judgment against Defendant for punitive damages for willful and wanton conduct.

    g.    Grant such other and further relief as this court deems just and proper.

## COUNT II
## COMPLAINT OF BASHAR ZAYADEEN FOR
## NATIONAL ORIGIN, ETHNICITY, AND RACE DISCRIMINATION DIRECTED AT ABBOTT MOLECULAR, INC. AND NICK SEMEDALAS

42.    That Bashar incorporates the preceding paragraphs by reference here.

43.    That Nick Semedalas, the same individual responsible for subjecting Bashar to a campaign of offensive, demeaning humiliating, and derogatory remarks due to his national origin, ethnicity, and race, made the decision to terminate Bashar's employment.

44.    That Nick Semedalas made the decision to terminate Bashar's employment because he was Jordanian and because of his ethnicity and race.

## PRAYER FOR RELIEF

WHEREFORE, Bashar respectfully requests that this Court provide the following equitable and legal remedies for relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date, and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendant from further acts of national origin discrimination and national origin harassment.

c. Award Bashar, back pay, reinstatement, appropriate future earnings and reimbursement for income, and fringe benefits lost to the present with applicable statutory interest.

d. Award Bashar, a judgment against Defendant for compensatory damages.

e. Grant judgment against Defendant for punitive damages for willful and wanton conduct.

f. Enter an order requiring Defendant to implement effective steps to eliminate national origin discrimination and national origin harassment from Defendant's company.

g. Grant such other and further relief as this Court deems just and proper.

## COUNT III
## COMPLAINT OF BASHAR ZAYDEEN FOR RETALIATION
## DIRECTED AT ABBOTT MOLECULAR, INC. AND NICK SEMEDALAS

45. That Bashar incorporates the preceding paragraphs by reference here.

46. That from approximately July 16, 2007 until the end of 2008, Bashar opposed unlawful national origin, ethnicity, and race discrimination by informing Nick Semedalas and Peter

Karbotsos, "[the harassment] is not funny and that I don't like it when you call me that," or asking them to "stop" or saying "my name is not Borat, that is offensive, please do not call me that."

47. That in approximately May 2009, Nick Semedalas became Bashar's supervisor.

48. That on approximately July 13, 2009, Bashar sought a personal leave of absence from Abbott in order to return to Jordan.

49. Said personal leave of absence was approved by Abbott and Nick Semedalas.

50. That prior to the expiration of the approved personal leave of absence, Bashar contacted Abbott in order to return to his job. Nick Semedalas called Bashar and told him that his position with Abbott was no longer available.

51. That Bashar's position, however, remained available and open.

52. That Bashar was terminated from Abbott because he opposed unlawful national origin, ethnicity and race discrimination.

## PRAYER FOR RELIEF

WHEREFORE, Bashar respectfully requests that this Court provide the following equitable and legal remedies for relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date, and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendant from further acts of national origin discrimination and national origin harassment.

    c.    Award Bashar, back pay, reinstatement, appropriate future earnings and reimbursement for income, and fringe benefits lost to the present with applicable statutory interest.

    d.    Award Bashar, a judgment against Defendant for compensatory damages.

    e.    Grant judgment against Defendant for punitive damages for willful and wanton conduct.

    f.    Enter an order requiring Defendant to implement effective steps to eliminate national origin discrimination and national origin harassment from Defendant's company.

    g.    Grant such other and further relief as this Court deems just and proper.

Respectfully Submitted,

Bashar Zayadeen,


By:    s/ Uche o. Asonye

One of his Attorneys

Uche O. Asonye - 6209522
Scott Fanning - 6292790
ASONYE & ASSOCIATES
39 South LaSalle Street, Suite 815
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)

## **JURY DEMAND**

NOW COMES Plaintiff Bashar Zayadeen by his undersigned attorney, and demands a trial by jury in the above entitled cause of action.

                                              Respectfully Submitted,
                                              Bashar Zayadeen,

                                              By:    s/ Uche O. Asonye
                                                      One of his Attorneys

Uche O. Asonye - 6209522
Scott Fanning - 6292790
ASONYE & ASSOCIATES
39 South LaSalle Street, Suite 815
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)